Good morning. Patty Lewis, appearing for the Plaintiffs and Appellants, Edna Benis, Pamela Seitz, and Todd Merrick, the family in this case. I have four points of clarification, if the Court would allow me. The first is, in reviewing and preparing for today, I realize I failed to include in the excerpts of record my briefing in the Sallie Mae motion to dismiss that brought us here. I also failed to include my briefing in my petition for reconsideration. Well, those are still part of the record, so they're accessible to us. Thank you. Respectfully apologize, but ask the Court to decide regardless. Secondly, the plaintiffs, the appellants, Benis, Seitz, Merrick, they are the innocents of this case. And by innocent, I say they had no input into Sallie Mae's contract, the promissory note. Well, they took the loan. Or at least one of them took the loan. At least one other acknowledges cosigning. The third does not acknowledge cosigning. But it's not like somebody voiced the loan upon them at gunpoint. I understand. Thank you, Your Honor. My point is that the notes are copyrighted. And at B6, the section in the promissory notes that defines disclosure, Sallie Mae refers to the disclosure as being a truth-in-lending disclosure. And the truth-in-lending law isn't new. The amendment came subsequently as new. But truth-in-lending as a concept has been around for decades. Absolutely. But the truth-in-lending act, as the Court accurately points out, did not apply at that time. These loans were taken out in 2004 to 2007. And the amendment that applied to student loans in the TILA Act did not occur until August 2008. But the plaintiffs didn't, the family did not know this. The debtors did not know this. They believe a reference to truth-in-lending is a reference to an act that's going to protect them. I've got to tell you, I just don't understand that argument. They surely didn't believe that that reference meant that applicable to this contract was a statute that isn't going to be passed for another three years. And hence, they'd get whatever was going to be promised by that amendment. They got whatever truth-in-lending laws required for this contract at that time. It may turn out that there was no requirement at that time. But they – what could they have relied upon? They couldn't see into the future and know that three years into the future a statute would be passed that would have required additional disclosures. What did they rely on? They relied upon the phrase, Your Honor, the phrase truth-in-lending. The phrase that they anticipated. But your allegation isn't that the documents were untruthful, so they didn't make additional disclosures. What was untruthful about the documents? Untruthful that future disclosures would be made about the truth of the loan, that the loan would include disclosures about the interest rate as it would occur later. Those disclosures were not made. And the problem that the appellants have is that they believed the truth. They believed Sally May would be telling them the truth. What did Sally May say that was untruthful? Sally May said that they would – that they would give disclosures at a later time, that they would explain later that – what it was that was being – that was being added, what charges were being added, what interest was being added to the promissory note, to the principle of the note. The plaintiffs did not – Suppose they had made those disclosures later. What would have been different? What was different was that Sally May did not explain what kind of interest would be applied, what kind of charges – But your clients had already signed the documents. At least two of them acknowledged they had. So to tell me that they would have made disclosure doing a better job of explaining how the interest was capitalized and how that caused the amount due to change doesn't change your client's legal obligation based on the documents they'd already signed. So to tell me that Sally May promised they would say something in the future doesn't tell me that your client has the option at that point to say, oh, I don't want to take the loan, because your client took the loan already, had already taken the money to pay the school tuition and so forth. So I don't hear how this leads to anything. How are your clients in a position to do anything different whether or not Sally May made the disclosures you allege they should have made? Sally May's disclosures failed to identify how the capitalization would compound a principle amount to the large amounts that did to 40 percent of the principle in nine months' time after the student left and the loan came due after the student left the school. Sally failed to identify. It used equivocal and misleading language so that there was no clear and conspicuous explanation of the terms that were related to capitalized interest. It described capitalized interest in the notes as a process that may add interest and fees when the operative word shall or will would have been more appropriate because that's indeed what happened, rather than may, maybe. So does may ever mean it won't happen? It said it might not happen, but it doesn't – it's not a promise to your client that it wouldn't happen? Yes, Your Honor. But shall or will would have been appropriate because Sally May knew that it would happen, and the students did not. Well, it happened because the payments weren't made, weren't they? It happened prior to the payments. The increase – it happened before the payments became due. The increase came at the time that the loan then was due. In other words, the increase in the capitalized principle was not affected by whether or not any payments were made because of the increase in capitalized interest in January. Ms. Lewis, as to Claim J, in December, the District Court denied your motion to reconsider the order issued, the dismissal order from November, but clarified that the motion was only insofar as contemplated by the moving papers. What was your understanding of what was contemplated by the moving papers as to Claim J? Claim J was Mrs. Seitz's statement that she did not sign the parcel of the house. The forgery claim. The forgery claim. The forgery claim, correct. And that was what the Court in August 2011 decided was an accurate claim. It was a claim for fraud based on forgery. It was clearly stated. It was properly stated. Unfortunately, somehow between August and November, the Court – I asked the Court to recall that it had made that finding, that's a law of the case, that the claim for forgery based on fraud stands. It was already decided. And the Court – Well, help me with this, because there is a final order dismissing the entire case. Yes. What is the forgery claim? I'm not sure I understand how that is spelled out. Mrs. Seitz is alleged to be a co-borrower on the notes, on three of the notes. And she alleges that she did not sign that – those promissory notes, nor did she invite anyone to sign for her. And therefore, she – sure, her claim is for fraud, that Sally May is saying she owes this money as a co-borrower when she was not a co-borrower. The co-borrower was Edna Benes on two of the notes. Okay. So the – this forgery claim would go only to her liability. Correct. Yes, Your Honor, that's true. And so we believe that the trial court erred in failing to recognize that it had previously entered in – Well, how did it fail to recognize? Look at the order denying your motion for reconsideration. And what does the court say there? It – it says that – Doesn't it say that was carved out of the motion filed by Sally May? So although the court's bottom line is deny your motion for reconsideration, it appears to do that because the motion's unnecessary, that Sally May's motion did not dispose of that claim and did not seek to dispose of that claim. That claim was part of the first cause of action, the first cause of action for fraud by all three plaintiffs. One of those plaintiffs had an additional claim. I understand that. And you – and you pointed out in your moving papers to the district court that the motion did not – I guess Sally May said in its motion it didn't go to that claim. That claim had already been carved out by the court the first time around. Yes. So I understand the court's order entered in December with regard to the motion for reconsideration to basically agree, that's right, that's not covered by the motion. The court only granted what the motion covered. So we don't need to reconsider. It's still standing. Only it got tossed out at the end of the case when you brought your motion to cancel the scheduling conference. And it looks to me like Sally May's papers to us acknowledge as much. They argue that the reason that claim isn't still in the case is that you abandoned it by not prosecuting between the December order and your April motion to cancel the scheduling conference. What's your response to that? What I understood the reconsideration order was was a dismissal of the entire first cause of action because the order that was signed by Sally May specifically – excuse me, the order that was signed by the court was a summary type of order. Having considered the motion, it is hereby ordered the motion is granted its entirety. First cause of action against defendant Sally May for fraud and deceit is dismissed with prejudice. There is no clarification on that statement. Well, clarification comes in the order on your motion. So take a look. Do you have in front of you the order denying motion for reconsideration? Yes. I guess it's ER 16, 016. Yes, Your Honor. And I understood that the court's denial of reconsideration was that the court dismissed the entire first cause of action. I did not understand that there was any carve-out in looking back at the order of November that the entire first cause of action was dismissed with prejudice. But what about the language that the court used that the claims are dismissed only as contemplated by the papers? Didn't that mean that claim J was not dismissed? I did not believe that, Your Honor. I believed that the court was telling me the entire motion was the entire first cause of action was dismissed. Would you like to save the balance of your time for rebuttal? Yes, Your Honor. You may. Good morning, Your Honors. Lisa Simonetti for Sally May Inc. All of these points have been addressed very thoroughly in the briefs, and I don't want to belabor any points. Is there anything you would like me to discuss? Well, we have one claim that appears to have been disposed of by the court at this point, only if we accept the proposition that plaintiff has abandoned it. Yes. Looking at the orders entered by the district court, although I read them consistent with your argument, I also have to say that it wasn't the most clear articulation possible by the district court. So should we let that claim evaporate simply because the district court wasn't especially clear and plaintiff's counsel didn't understand the import of what the court was apparently trying to say? Why should we let it evaporate that way? Sally May has never been attempting to get in the way of that claim. It was carved out of the original motion, and I understand your points about the order. The court did what it did, but that claim has not been a concern with respect to everything else addressed here. It's been carved out. I don't understand what you're saying. I guess I don't understand what you're saying. Your original moving papers did carve out that claim. Exactly. Yes. And when it was granted, the motion to dismiss was granted, then you say, well, that was still carved out. Yes. And the motion for reconsideration saying don't dismiss this claim, the court said I didn't. Right. And so your position now is that having not done anything in the future to following that to pursue that claim, it was abandoned. Yes. I think it was abandoned. The legal effect of that is for this Court to decide, but it certainly was abandoned. Let me ask you this. So do you concede that it was properly pled as a fraud claim? I think for purposes of this argument, we would. Sure. So when was Claim J dismissed? The motion for reconsideration was decided on December 27th of 2011, I believe. I can check that date for you. And that was the last action taken on that claim, as far as I know. But that action seems, from its somewhat confusing language, to preserve Claim J, doesn't it? It does. How can it be dismissed? How can it be dismissed if it seems pretty clear that the Court preserved it? And I think the intent of Sallie Mae was not to challenge it and to allow it to go forward. And then this order was entered, and then plaintiffs did nothing. So that is where we are right now. So why wasn't it dismissed on April 25th, when the Court ordered the entire case dismissed? Why wouldn't that be the date that Claim J was dismissed? You're probably right. It is. You're probably right. For final judgment purposes, there's nothing left standing in the District Court. But it looks like the only reason that Claim J dropped out was the misunderstanding of plaintiff's counsel as to whether it had been disposed of before. Okay. So now we're at the point. So we have the issue of whether we should accept abandonment or permit the reinstatement of that claim, assuming for the moment that we would agree with you with regard to the claims that actually were intentionally disposed of by the District Court. Right. And I don't want to put words in your mouth, but I guess I hear you saying you would understand if this Court would decide that claim actually hasn't been shot down yet. I would understand that. I think that after a long period of inaction, I question whether that's the right result. But, you know, a new complaint could be filed at any point in time, and that did not occur either. So but having said all of that, I understand the record that brought us here today and certainly the decision. If Claim J was dismissed in April 2012, is that dismissal properly before us today? I do not believe the dismissal itself in all of the terms that we have just discussed is argued at all. Well, the – if – I feel like I'm taking a law school civil procedure exam. I feel like I'm in the bar exam. Isn't it understandable that the plaintiffs would move for an order of dismissal to clarify the record so that they could appeal? I think so. I mean, that seems to be a sensible thing to do. And so that's not entirely – I mean, answer my question. Did you do – did you do anything with respect to that forgery claim that you now say was carved out between the time of the denial of the motion for reconsideration and – or between November and the denial of the reconsideration? No, we did not. There was no discovery or – No. I don't believe so. Are you making the argument that the – that Claim J was voluntarily abandoned? I'm interpreting a long period of inaction. And I can't explain why plaintiffs did what they did with respect to that claim. Frankly, under these circumstances, I don't think the burden was ours. I think the burden was on plaintiff. And the record stands as it is after these two years of simply this appeal being filed. So I can't explain that conduct. So the long period is the, what, four months between the December reconsideration order and the April dismissal of the case? And all of the time thereafter. I mean, even through these briefs, we've made clear that that was a carved-out allegation. Nothing further has transpired. And so really we're talking about the time period from, you know, the original decision until now. Well, with respect to the main claim against – because this affects only one of the plaintiffs. With respect to the main claim, as I understand it, the loan was taken out, the student had the benefit of the money and went to school for several years. Correct. The contract said an interest was accruing during that entire period. Am I correct that the payments could have been made on the loan, even though there was no due date yet? Or is that? Yes. The provisions that set forth when interest is accruing and when it's payable and when it's capitalized are on pages 9 and 10 of our brief. And there is an interim period, then there's a repayment period that commences when the interim period ends. I'm sorry. Which page? 9 and 10. Okay. The page 10 says I'm not required to make payments during the interim period. That's right. But presumably, and not many students do, that's the point. You have to walk through the month. Exactly. But they could. That's right. And the capitalization results from the interest payments that aren't made during that period. That's correct. Whenever the period ends, you figure out how much is accumulated and that gets capitalized. That's right. And this particular student applied for a forbearance. And the forbearance was approximately six months long. So that was an additional time period where this was occurring. And if you look at the capitalized interest provision itself at the very end, which is on page 10, it states that capitalizing increases the total cost of the loan. I have one more question about Claim J. The appeal, in this case, clearly raised the issue of Claim J, the forgery. But the appeal also did not appear to challenge the April order, correct? That's correct. Or even argue, as I understand the briefing, that the April order was incorrect. Or error. So the question is whether that dismissal, if it was indeed in April of 2012, is properly before us. You had notice of the fact that the Claim J issue was an issue for appeal, correct? Yes. So is that claim properly before us? Just to make sure I understand your question. Are you asking me whether there's a procedural reason that it is not before you? Well, there's the issue of whether the April 25th order was challenged. I don't see anywhere in the appeal that it was challenged, although the Claim J issue was raised. Right. So the question is, if we find that Claim J was dismissed in April of 2012, is the Claim J issue properly before us? I think the answer would be no, then. What happened with regard? This is extra record. Okay. But I'm trying to figure out to that claim. Civil procedure, right? Okay. Well, what the heck. Because a number of the claims were somehow dismissed by settlement and so forth. So I'm trying to figure out, even theoretically, if there's something still standing to the alleged forgery. Have those notes been or the amounts due as a result of those notes that she claims that she did not co-sign, are those debts still outstanding? I do not know the answer to that question. I didn't look in connection with those. You properly stick to the record, see, that's the good part. All right. Okay. Anything else you want to tell us? No, Your Honor. I think that's it. We thank you with your assistance in our working our way through the thicket. And Ms. Lewis, you have a little more than a minute left. Thank you, Your Honor. And I do have to say that I did believe the November order was a dismissal with prejudice of the entire first cause of action. That's where I misunderstood the reconsideration order, if that's what the reconsideration order, if the court finds that's what it says. As to the April order, I had settled the other claims involving the collectors between December and April so that we could come here on the issue of at least Mrs. Seitz's claim for fraud by forgery. And I believed that the November order was the order. Well, what is still, there's an issue that says a general state court fraud claim with respect to the capitalization. Is that, as to the other defendants, is that still there? Not as to the other defendants. It's only this defendant left in the case? Yes. Those were settled, Your Honor. And as to the plaintiffs? The plaintiffs are still in the case. They are, Mrs. Dennis is here for the claim that the fraud and the inducement of the contract induced her to sign. Mrs. Seitz is here for the sole reason that she never signed. Mr. Merrick is here for the reason, for both. In other words, Mrs. Bennett has settled her matters on Salome's attempted second collection. That is what we have. Thank you. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Tunheim, Schroeder, Clifton